On Remand from the U.S. Court of Appeals for the Federal Circuit
ORDER
PER CURIAM.
Currently pending before the Court are two motions related to this World War II veteran’s appeal. The first is the Secretary’s May 19, 2005, motion to, inter aha, dismiss this appeal as moot, and the second is the movant’s July 21, 2005, motion for substitution. The facts relevant to the disposition of these motions are as follows.
In March 1993, the appellant, Barney O. Padgett, filed a disability compensation claim with his VA regional office (RO) for a right-hip disorder. Nearly a decade later, in August 2002, the Board of Veterans’ Appeals (Board) denied that claim, finding that his disability was not service connected. Mr. Padgett appealed, and a panel of judges initially vacated that Board decision. Padgett v. Principi, 18 Vet.App. 188 (2004) (withdrawn). However, the full Court later agreed to rehear the case. Padgett v. Principi, 18 Vet.App. 404 (2004) (per curiam order).
In April 2005, the full Court reversed the Board’s denial of secondary service connection for Mr. Padgett’s disability, vacated the Board’s denial of direct and presumptive service connection, and remanded his claim to VA for further adjudication. See Padgett v. Nicholson (Full Court Opinion), 19 Vet.App. 133 (2005) (en banc). In so doing, the full Court also unanimously held that under the “clearly erroneous” standard of review, a Board finding can be reversed on appeal without uncontroverted evidence in the appellant’s favor and overruled any suggestion to the contrary in our prior decisions, including Hicks v. Brown, 8 Vet.App. 417, 422 (1995) (quoting Hersey v. Derwinski, 2 Vet.App. 91, 95 (1992)). A few days after the Full Court Opinion issued, the Court learned that, on November 3, 2004, Mr. Padgett had died.
In May 2005, the Secretary filed his pending motion, under Landicho v. Brown, 7 Vet.App. 42 (1994), to withdraw the Full Court Opinion, vacate the underlying Board decision, and dismiss Mr. Padgett’s appeal as moot. Mr. Padgett’s widow, Sue Padgett, responded by filing her pending motion for substitution as a party to his appeal. In September 2005, the full Court granted the Secretary’s motion and denied Ms. Padgett’s request for substitution as moot. Padgett v. Nicholson (Withdrawal Order), 19 Vet.App. 334 (2005) (en banc per curiam order) (Steinberg & Kasold, JJ., dissenting). Ms. Padgett appealed that order to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit).
In the meantime and while that appeal was pending, the RO began adjudicating two original claims filed by Ms. Padgett. The first sought accrued benefits, i.e., the payment to a surviving spouse (or other eligible beneficiary) of any VA benefits owed to the veteran at the time of his or her death. The second sought dependency and indemnity compensation, i.e., an award of monthly compensation to a surviving spouse (or other eligible beneficiary) in the event that a veteran dies from a service-connected disability. In November 2006, the RO denied both of those claims.
In January 2007, the Federal Circuit decided Ms. Padgett’s appeal. It held that this Article I Court had the discretionary *162 authority to enter a judgment nunc pro tunc as of the date of Mr. Padgett’s death and to substitute Ms. Padgett as a party to his appeal. Padgett v. Nicholson (Federal Circuit Opinion), 473 F.3d 1364, 1367-70 (Fed.Cir.2007) (Linn, J., dissenting). Accordingly, that court reversed the Withdrawal Order and remanded the matter for a determination as to whether nunc pro tunc relief and substitution were warranted.
Before addressing that question on remand, this Court ordered the parties to submit an update on the status of Ms. Padgett’s claims. The Secretary responded by revealing that shortly after the issuance of the Federal Circuit Opinion, he instructed the RO to conduct a “special review” of Ms. Padgett’s accrued benefits and DIC claims. He further revealed that at the conclusion of that special review, in late January 2007, the RO issued a new decision on her accrued benefits claim, and that, in that decision, the RO reversed the November 2006 denial of that claim and awarded Ms. Padgett those benefits on the theory that her husband’s right-hip disorder was directly service connected. Ms. Padgett did not appeal, and that decision became final.
These are all of the facts relevant to the disposition of the pending motions. With them in mind and for the reasons that follow, the Court will dismiss Ms. Pad-gett’s July 21, 2005, motion for substitution as moot, and deny the Secretary’s May 19, 2005, motion to, inter aha, withdraw the Full Court Opinion. The Court will also order the Clerk to issue the Full Court Opinion nunc pro tunc as of November 2, 2004, the day prior to Mr. Padgett’s death.
I. MS. PADGETT’S MOTION TO SUBSTITUTE
This Article I Court adheres to the case-or-controversy requirement of Article III, § 2, of the United States Constitution. Mokal v. Derwinski, 1 Vet.App. 12, 15 (1990) (“[W]e are granted power judicial in nature and being statutorily characterized as a ‘Court’ we are free, in the absence of a congressional directive to the contrary, to adopt as a matter of policy the jurisdictional restrictions of the Article III case or controversy rubric.”). That constitutional “limitation on federal judicial authority ... underpins both our standing and our mootness jurisprudence, but the two inquiries differ in respects critical to the proper resolution of this case.” Friends of the Earth v. Laidlaw, 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).
In terms of the former, “the party invoking federal jurisdiction bears the burden of establishing [standing],” Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)), i.e., an “injury in fact” caused by the challenged conduct of the defendant and likely to be redressed by a favorable decision. See e.g., Friends of the Earth, 528 U.S. at 180-81, 120 S.Ct. 693; Steel Co., 523 U.S. at 102-04, 118 S.Ct. 1003; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing is typically characterized as “[t]he requisite personal interest that must exist at the commencement of the litigation.” Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (citations and quotations omitted). However, Article III standing “must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.” Id. at 64, 117 S.Ct. 1055 (1997) (citing Diamond v. Charles, 476 U.S. 54, 62, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986)). Accordingly, a party seeking to take the place of another liti *163 gant on appeal bears the burden of demonstrating that he or she has “ ‘a direct stake in the outcome’ ” of that proceeding. Id. (quoting Diamond, 476 U.S. at 62, 106 S.Ct. 1697).
With respect to the latter, a party seeking to deprive a federal court of jurisdiction bears the burden of establishing mootness, Friends of the Earth, 528 U.S. at 189-190, 120 S.Ct. 693, i.e., that “[t]he controversy between the parties has thus clearly ceased to be ‘definite and concrete’ and no longer ‘touch(es) the legal relations of parties having adverse legal interests.’ ” DeFunis v. Odegaard, 416 U.S. 312, 317, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)); see Church of Scientology of Calif. v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (noting that a case is moot if “an event occurs while a case is pending on appeal that makes it impossible for the court to grant ‘any effectual relief whatever’ to a prevailing party”) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)); see also Friends of the Earth, 528 U.S. at 192, 120 S.Ct. 693 (stating that the Federal courts do not have “license ... to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest”). Moreover, that is a “heavy burden” if the party making the allegation of mootness also brought about that result through his or her own voluntary conduct. 528 U.S. at 189-190, 120 S.Ct. 693 (citing United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); City of Mesquite v. Aladdin’s Castle, Inc., 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)). In that circumstance, the culpable party “bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.” Id. at 190, 120 S.Ct. 693. Otherwise, “ ‘the courts would be compelled to leave “[t]he defendant ... free to return to his old ways.” ’ ” City of Mesquite, 455 U.S. at 289, n. 10, 102 S.Ct. 1070 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)) (internal citations omitted).
The Secretary argues that Ms. Padgett’s motion for substitution is moot. He notes that her standing to seek substitution derived from the continuing relevance and preclusive effect that the issues decided in this appeal would have in the adjudication of her accrued benefits claim. However, he argues that Ms. Padgett’s receipt of those benefits, in late January 2007, eliminated her Article III interest in this appeal. Ms. Padgett disagrees. She notes that, in the Full Court Opinion, we held that her husband’s right-hip disorder was secondarily service-connected, and that the Court’s holding establishes a basis for her award of accrued benefits. She further notes that our decision' — unlike the January 2007 RO decision — cannot be overturned by the Secretary. Therefore, she argues that her Article III interests are served through the preservation of the Full Court Opinion to an extent sufficient to defeat any allegation that her motion to substitute is moot.
Before addressing the parties’ arguments on the question of mootness, we must first consider whether Ms. Padgett ever had standing to seek substitution. As explained in the Federal Circuit Opinion, a party seeking substitution before this Court must satisfy a two-part inquiry. 473 F.3d at 1370; see also Pekular v. Mansfield, 21 Vet.App. 495, 500-502 (2007). First, he or she must have Article III standing, 473 F.3d at 1370 (citing Mokal, 1 Vet.App. at 13); i.e., “ ‘a personal stake in *164 the outcome’ ” of the case or controversy on appeal. Socialist Labor Party v. Gilligan, 406 U.S. 583, 586-87, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)); see North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (“[F]ederal courts are without power to decide questions that cannot affect the rights of the litigants before them.”); U.S. Bancorp v. Bonner Mall Partnership, 513 U.S. 18, 20, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (“[A]n Article III case or controversy ... must exist at all stages of appellate review.”); Arizonans for Official English, 520 U.S. at 67, 117 S.Ct. 1055 (Under Article III “an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.”). Second, he or she must have statutory standing, i.e., be “adversely affected” by the Board decision on appeal. Federal Circuit Opinion, 473 F.3d at 1370 (citing 38 U.S.C. § 7266(a)); see also Pekular, 21 Vet.App. at 500-502. The Federal Circuit already held that Ms. Padgett met both of those requirements when she filed her motion for substitution in July 2005. 473 F.3d at 1370. As this Court is bound by those determinations on remand, we conclude that Ms. Padgett had the requisite standing to seek substitution as a party to this appeal.
Having answered that threshold question, we can properly consider whether her motion to substitute is now moot. We believe that it is. As noted above, Ms. Padgett’s standing to seek substitution derived solely from her status as a prospective claimant and potential recipient of accrued benefits. 473 F.3d at 1370 (“The continuing relevance and preclusive effect that the issues decided in [Mr.] Padgett’s appeal have for her section 5121(a) claim [for accrued benefits] are sufficient to meet the case or controversy requirement.”). However, her claim for accrued benefits has been granted in a final RO decision, and she is now in actual receipt of those benefits. Thus, Ms. Padgett can no longer invoke her prior status in either respect as the Article III interest that supports her substitution as a party to this appeal. In addition, the factual discrepancy between the Full Court Opinion and the January 2007 RO decision, in terms of the basis for granting Mr. Padgett service connection, does not provide Ms. Padgett with the Article III interest needed to continue litigating this appeal. Regardless of whether her husband’s disability is directly (as the January 2007 RO decision found) or secondarily (as the Full Court Opinion held) service connected, the amount of accrued benefits she would receive is exactly the same. See Roper v. Nicholson, 20 Vet.App. 173, 177-81 (2006). Finally, the possibility that the Secretary might try to revoke his decision awarding Ms. Padgett accrued benefits in the future does not, without more, create an Article III case or controversy. “[S]uch speculative contingencies afford no basis for our passing on the substantive issues [the mov-ant] would have us decide ... in the absence of evidence that this is a prospect of immediacy and reality.” DeFunis, 416 U.S. at 320, n. 5, 94 S.Ct. 1704 (internal citations and quotations omitted); see Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (“A claim is not ripe for adjudication if it rests upon ‘contingent future events that may not occur as anticipated, or indeed may not occur at all.’ ”) (quoting Thomas v. Union Carbide Agricultural Prod. Co., 473 U.S. 568, 580-81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (internal quotations omitted)).[1] We *165 are not suggesting that the Secretary’s unilateral award of benefits will always moot a case on appeal. Indeed, a contrary result might arise outside the specific facts of this case. For instance, Ms. Padgett’s motion for substitution might not be moot if she had appealed the RO’s January 2007 decision or if some other claim relevant to the outcome of these proceedings was pending. However, in the absence of such circumstances and on the narrow facts presented here, the Court holds that the Secretary has met his “heavy burden” of establishing that Ms. Padgett’s motion is now moot.
II. THE SECRETARY’S MOTION TO WITHDRAW THE FULL COURT OPINION
The Secretary further argues that Mr. Padgett’s appeal is now moot, and that the Full Court Opinion must be withdrawn. Though we agree with the Secretary in the first respect, we cannot conclude, on the facts of this case, that the use of our discretionary authority to withdraw the Full Court Opinion is warranted.
This appeal no longer satisfies the requirements of Article III. Mr. Padgett’s personal stake and continuing interest in the outcome thereof ceased upon his death, see Federal Circuit Opinion, 473 F.3d at 1370 (noting “the general rule that a veteran’s claim for benefits ends with his death ... ”), and Ms. Padgett’s receipt of accrued benefits, in a final RO decision, ensures that neither she nor any other party will be able to continue this litigation on his behalf. See Pelea v. Nicholson, 497 F.3d 1290, 1292-93 (Fed.Cir.2007). Thus, Mr. Padgett’s appeal is now undeniably moot.
However, that does not mean that we must withdraw the Full Court Opinion. First, Mr. Padgett’s appeal did not become moot until after the issuance of that decision.[2] Therefore, the proper disposition of the Full Court Opinion lies within our sound discretion, see Humphreys v. Drug Enforcement Administration, 105 F.3d 112, 113 (3d Cir.1996) (“Because we plainly had jurisdiction over the appeal at the time our opinion was filed, our decision whether to vacate is discretionary.”), and must be made “in the manner ‘ “most consonant to justice” ... in view of the nature and character of the conditions which have caused the case to become moot.’ ” Bancorp, 513 U.S. 18 at 24, 115 S.Ct. 386, 130 L.Ed.2d 233 (quoting United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft, 239 U.S. 466, 477-78, 36 S.Ct. 212, 60 L.Ed. 387 (1916) (quoting South Spring Hill Gold Mining Co. v. Amador Medean Gold Mining Co., 145 U.S. 300, 302, 12 S.Ct. 921, 36 L.Ed. 712 (1892))). Consistent with those principles, the relevant authorities in this area distinguish between cases that become moot on appeal “due to circumstances unattributable to any of the parties,” Karcher v. May, 484 U.S. 72, 83, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987), or other “happenstance,” United States v. Munsingwear, Inc., 340 U.S. 36, 40, 71 S.Ct. 104, 95 L.Ed. 36 (1950), and those that become moot on appeal due to the voluntary conduct of one or both parties. See Friends of the Earth, 528 U.S. at 194, n. 6, *166 120 S.Ct. 693 (“We note that it is far from clear that vacatur of the District Court’s judgment would be the appropriate response to a finding of mootness on appeal brought about by the voluntary conduct of the party that lost in the District Court.”); Bancorp, supra; Staley v. Harris Cty., Texas, 485 F.3d 305, 311, n. 2 (5th Cir.2007), cert. petition denied, - U.S. -, -, 128 S.Ct. 650, 651, 169 L.Ed.2d 507 (2007) (memorandum); Mfrs. Hanover Trust Co. v. Yanakas, 11 F.3d 381, 383 (2d Cir.1993); see also Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 121 (4th Cir.2000) (holding that the U.S. Bancorp Mortgage Co. principles are applicable at both the district court and appellate court level when considering whether to withdraw or vacate a decision of the court). In the first situation, the parties are (through no fault of their own) involuntarily deprived of their appellate rights. Thus, justice requires that any prior decisions in that ease be withdrawn or vacated. Bancorp, 513 U.S. at 25, 115 S.Ct. 386 (“A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.”). Conversely, in the second situation, the culpable party (through his or her own voluntary conduct) effectively forfeits his or her right to further appellate review. Accordingly, justice may require a contrary disposition of any prior decisions. See Bancorp, 513 U.S. at 29, 115 S.Ct. 386 (“[H]old[ing] that mootness by reason of settlement does not justify vacatur of a judgment under review.”); Staley, 485 F.3d at 311, n. 2 (“[I]n cases mooted by the voluntary action or inaction of a party, we have decided the vacatur question in favor of the party that did not cause the case to become moot.”); Mfrs. Hanover Trust Co., 11 F.3d at 383 (“If we were to vacate where the party that lost in the district court has taken action to moot the controversy, the result would be to allow that party to eliminate its loss without an appeal and to deprive the winning party of the judicial protection it has fairly won.”).
We believe that Mr. Padgett’s appeal became moot because of the voluntary conduct of the Secretary. At the time of the Federal Circuit Opinion, this appeal satisfied the requirements of Article III because of Ms. Padgett’s ability to seek substitution. However, the Secretary eliminated that possibility with his award of accrued benefits, thereby depriving Ms. Padgett of the Article III interest needed for substitution. Thus, it was the Secretary’s decision to award Ms. Padgett accrued benefits, not the death of Mr. Pad-gett or other happenstance, that ultimately caused this appeal to become moot. Moreover, the Secretary’s conduct in that regard was entirely voluntary. He was not obliged to order the “special review” that ended with the RO decision awarding-in a reversal of VA’s long-standing position-Mr. Padgett service connection and Ms. Padgett accrued benefits. Accordingly, he pursued that course of action at the risk of impairing, or even sacrificing, his rights in this parallel proceeding. Moreover, even if the Secretary believed he was obliged to order that special review, the prudent course of action&emdash;and the one not taken here&emdash;would have been to request a stay of the RO proceeding pending a resolution of the remand ordered in the Federal Circuit Opinion. See Ribaudo v. Nicholson, 20 Vet.App. 552 (2007). For these reasons, the Court holds that the Secretary’s voluntary conduct in awarding Ms. Padgett accrued benefits caused this appeal to become moot.
We further believe that the Secretary has not met his burden of showing entitlement to the equitable remedy of withdrawal. Bancorp, 513 U.S. at 26, 115 *167 S.Ct. 386.[3] His primary argument in that respect is that a failure to grant a withdrawal effectively precludes his ability to seek further appellate review of the Full Court Opinion. However, the Secretary forfeited that right by his own voluntary conduct, and in any event he can seek review of the merits of the legal holdings in the Full Court Opinion in other future cases brought before the Federal Circuit. In contrast, Ms. Padgett’s countervailing interest in preserving the Full Court Opinion is unusually strong, see Winsett v. Principi, 341 F.3d 1329, 1331 (holding that final Board decisions appealed to and decided by the Court are not subject to revision on the basis of clear and unmistakable error), and it coincides with that of the public. Judicial decisions “ ‘are not merely the property of private litigants and should stand unless a court concludes that’ ” a contrary result would serve “the public interest.” U.S. Bancorp Mortgage Co., 513 U.S. at 26, 115 S.Ct. 386 (quoting Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp., 510 U.S. 27, 40, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993) (Stevens, J., dissenting)). As noted above, the Full Court Opinion clarified the proper application of the “clearly erroneous” standard of review in cases on appeal to this Court and unanimously overruled any possible contrary interpretation in our prior decisions, including Hicks, supra. That holding, effective for several months, in 2005, and since the issuance of the Federal Circuit Opinion, is part of a decision that the law presumes was correct. See Bancorp, 513 U.S. at 26, 115 S.Ct. 386; Federal Circuit Opinion, 473 F.3d at 1369. The Court also notes that granting the Secretary’s motion to withdraw might sanction his use of an equitable remedy “as a refined form of collateral attack,” thereby “disturb[ing] the orderly operation” of the existing statutory system for obtaining appellate review. Bancorp, 513 U.S. at 27, 115 S.Ct. 386. That suggestion must be scrupulously avoided in light of the facts of this case. For the foregoing reasons, the Court holds that the Secretary has failed to demonstrate entitlement to the equitable remedies sought in his motion to withdraw. Accordingly, that motion will be denied.
III. NUNC PRO TUNC AUTHORITY AND MR. PADGETT’S APPEAL
Having concluded that a withdrawal is not warranted, the Court will issue the Full Court Opinion nunc pro tunc on the day before Mr. Padgett’s death. We recognize that this might seem contrary to the Federal Circuit’s admonition that “if Mrs. Padgett could not be substituted, nunc pro tunc relief would be inappropriate.” Federal Circuit Opinion, 473 F.3d at 1370. However, the Court concludes that the Federal Circuit did not intend that rule to extend to cases rendered moot on appeal by the Secretary’s voluntary conduct. In that circumstance, an award of nunc pro tunc relief is entirely appropriate. See Blaok’s Law Dictionary 1100 (8th ed.2004) (“ ‘When an order is signed “nunc pro tunc” as of a specified date, it means that a thing is now done which should have been done on the specified date.’ ” (quoting 35A C.J.S. Federal Civil Procedure § 370 (1960))); see also Federal Circuit Opinion, 473 F.3d at 1370-71.
*168 IV. CONCLUSION
Upon consideration of the foregoing, it is
ORDERED that Ms. Padgett’s July 21, 2005, motion to substitute is DISMISSED for lack of jurisdiction.
ORDERED that the Secretary’s May 19, 2005, motion to withdraw the Full Court Opinion, dismiss the appeal, and vacate the underlying Board decision is DENIED. It is further
ORDERED that the Full Court Opinion is issued nunc pro tunc on November 2, 2004.

. The Court also notes that Ms. Padgett would be afforded a full panoply of substantive and procedural protections in the unlikely event that such an action by the Secretary ever *165 occurred. See 38 C.F.R. § 3.500-3.669 (2008) (discussing reductions, discontinuances, and adjustments of benefits).

. We know this because, if the opposite were true, the Federal Circuit would have simply dismissed this case for want of jurisdiction. See Steel Co., 523 U.S. at 94, 118 S.Ct. 1003 (“Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case.”) (internal citations omitted).

. We recognize that most of the Bancorp-type cases cited herein involve a superior tribunal's refusal to vacate em inferior tribunal's decision where the voluntary conduct of a party causes a case to becomes moot on appeal. But see Mfrs. Hanover Trust Co., supra. However, we do not believe that distinction is significant. Id. The underlying principle in all of these cases is that a losing litigant should not be able to erase an unfavorable decision by mooting the case through voluntary, post-decisional conduct.