# United States Court of Appeals for the Federal Circuit

---

**CLARA SUE PADGETT,**

*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2010-7081

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 02-2259.

---

Decided: June 30, 2011

---

ERIC A. SHUMSKY, Sidley Austin, LLP, of Washington, DC, argued for claimant-appellant. With him on the brief were TARA MIKKILINENI and ANAND H. DAS. Of counsel on the brief were BARTON F. STICHMAN and LOUIS J. GEORGE, National Veterans Legal Services Program, of Washington, DC.

MARTIN F. HOCKEY, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY

WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, KIRK T. MANHARDT, Assistant Director, and MEREDYTH COHEN HAVASY, Trial Attorney. Of counsel was SAMEER P. YARAWADEKAR, Attorney. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and MARTIN J. SENDEK, Attorney, United States Department of Veteran Affairs, of Washington, DC.

———————————————

Before GAJARSA, MAYER, and O'MALLEY, *Circuit Judges.*

MAYER, *Circuit Judge.*

Clara Sue Padgett ("Mrs. Padgett") appeals from a final order of the United States Court of Appeals for Veterans Claims ("Veterans Court") denying, in part, her application for an award of attorney fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See Padgett v. Shinseki*, 23 Vet. App. 306 (2009) ("*EAJA Decision*"). Because we conclude that the Veterans Court erred in refusing to award Mrs. Padgett fees for attorney time expended following the death of her husband, Barney O. Padgett ("Padgett"), we reverse and remand.

## BACKGROUND

Padgett served on active duty in the United States Army from January 1943 until July 1945. He served in Europe, Africa, and the Middle East, and was awarded, among other commendations, the Bronze Star and the Purple Heart. In August 1945, Padgett was awarded disability benefits for a left knee injury he incurred while in the Army. In March 1993, he filed a claim seeking service-connected benefits for a right hip injury, but his claim was denied by a Department of Veterans Affairs Regional Office ("RO"). In 1995, however, the Board of

Veterans' Appeals ("board") remanded the case to the RO for reconsideration.

On remand, the RO again denied Padgett's claim, and the board again reversed and remanded. Ultimately, in December 1999, the board affirmed the RO's third denial of Padgett's claim, concluding that his hip disability "was not incurred, directly or presumptively, in service" and was "not proximately due to or the result of [his] service-connected left knee disability."

In 2001, the Veterans Court vacated the board's decision and remanded for reconsideration. *See Padgett v. Principi*, No. 00-659, 2001 U.S. App. Vet. Claims LEXIS 339 (Mar. 26, 2001). On remand, the board denied Padgett's claim, but a panel of the Veterans Court again vacated the board's decision. *See Padgett v. Principi*, 18 Vet. App. 188, 195-96 (2004). Both Padgett and the Secretary of Veterans Affairs petitioned the court for en banc review, which was granted on September 14, 2004. On April 19, 2005, the Veterans Court issued an en banc opinion reversing the board's decision to deny Padgett's claim for service connection. *Padgett v. Nicholson*, 19 Vet. App. 133 (2005) (en banc) ("*En Banc Decision*"). The court determined that the board's analysis of the issue of secondary service connection—whether Padgett's hip disability was aggravated by his service-connected left knee injury—was "simply not plausible in light of the record viewed in its entirety." *Id.* at 150 (citations and internal quotation marks omitted). In the court's view, "[t]he only plausible resolution of the key factual issue on the record in this case is that Mr. Padgett's right-hip disability was aggravated by his service-connected left-knee disability." *Id.* Having resolved the issue of secondary service connection in Padgett's favor, the court remanded the case for an assignment of a disability rating and a determination of an effective date for the award of disability benefits. *Id.*

The court also vacated and remanded on the question of direct service connection, concluding that the board had erred in rejecting the opinions of two physicians who submitted statements indicating that Padgett had injured his right hip while on active duty. *Id.* at 151-52.

Shortly after the *En Banc Decision* issued, Padgett's attorney informed the Veterans Court that Padgett had died on November 3, 2004. Soon thereafter, the Secretary moved to recall the *En Banc Decision* and to dismiss Padgett's appeal as moot. Mrs. Padgett opposed the Secretary's motion and requested that she be substituted for her husband on appeal in order to preserve the court's judgment granting her husband service connection. On September 7, 2005, the Veterans Court (1) withdrew its *En Banc Decision*; (2) dismissed Padgett's appeal as moot; (3) vacated the underlying board decision; and (4) denied Mrs. Padgett's motion to be substituted. *Padgett v. Nicholson*, 19 Vet. App. 334, 336 (2005) ("*Withdrawal Order*").

On appeal, this court reversed. Relying upon a long line of Supreme Court authority, we concluded that Padgett's death did not moot the case because it had been fully briefed and submitted to the Veterans Court prior to his death. *Padgett v. Nicholson*, 473 F.3d 1364, 1367 (Fed. Cir. 2007) ("*Padgett I*"). We explained that "[w]here a party dies after his case is submitted, but before the opinion issues, and the case would otherwise be rendered moot, the Supreme Court has consistently entered judgment *nunc pro tunc* to the date of the party's death." *Id.*

We concluded, moreover, that Mrs. Padgett should be allowed to substitute on her husband's appeal given "[t]he continuing relevance and preclusive effect" that the adjudication of his claim had on her own claim for accrued

benefits.[1]  *Id.* at 1370.  We explained that if the *En Banc Decision* were withdrawn, the board's prior decision denying Padgett benefits would be reinstated and "would adversely affect [Mrs. Padgett's own claim for accrued benefits] in the same way it adversely impacted Padgett's claim at the time he filed his notice of appeal." *Padgett I,* 473 F.3d at 1370.

In June 2006, while the appeal to this court was pending, Mrs. Padgett filed her own claim for accrued benefits. The RO denied her claim, however, pointing to the board's previous decision denying Padgett's claim for service connection. After *Padgett I* required the Veterans Court to reinstate its *En Banc Decision*, however, the Secretary instructed the RO to conduct a "special review" of Mrs. Padgett's accrued benefits claim.  The RO thereafter reversed its earlier decision and awarded Mrs. Padgett accrued benefits.  Relying upon the *En Banc Decision*, the RO concluded that (1) it had erred in rejecting the opinions of two physicians who had submitted statements indicating that Padgett had injured his hip while on active duty; and (2) its denial of Padgett's claim for direct service connection had been "clearly and unmistakably erroneous."

On July 8, 2008, on remand from this court, the Veterans Court reinstated its *En Banc Decision* awarding Padgett service connection *nunc pro tunc* to the day before he died. *Padgett v. Peake*, 22 Vet. App. 159, 167-68 (2008) ("*Nunc Pro Tunc Decision*").  The court, however, denied Mrs. Padgett's motion to substitute on her husband's claim.  *Id.* at 163-64.  In the court's view, Mrs. Padgett

---

[1]  Accrued benefits" are benefits that are "due and unpaid" to the veteran at the time of his death.  38 U.S.C. § 5121(a).  A surviving spouse, or other appropriate beneficiary, can receive these accrued benefits after a veteran's death.  *Id.*

was deprived of standing to be substituted on her husband's claim when the RO granted her application for accrued benefits. *Id.* at 164.

On October 27, 2008, Mrs. Padgett filed an application seeking $87,802.17 in attorney fees and expenses under the EAJA as well as a motion to substitute for purposes of pursuing the EAJA application on her husband's behalf. The Secretary opposed the motion to substitute, noting that Mrs. Padgett had been denied substitution on her husband's claim following the Secretary's decision to award her accrued benefits. On February 3, 2009, the Veterans Court issued an order asking Mrs. Padgett to "provide information as to whether she [was] the executor or personal representative of [Padgett's] estate." In response, Mrs. Padgett informed the court that she was named the personal representative of her husband's estate pursuant to his last will and testament. The Veterans Court subsequently granted Mrs. Padgett's motion to be substituted for purposes of the EAJA proceedings, explaining that "[a]lthough Mrs. Padgett was denied substitution in the underlying merits case, her status as the personal representative of her deceased husband's estate gives her standing to be substituted in an EAJA action."

On December 16, 2009, the Veterans Court granted, in part, Mrs. Padgett's application for attorney fees. *EAJA Decision*, 23 Vet. App. at 312-13. The court determined that Mrs. Padgett had the right, as the representative of Padgett's estate, to recover fees for attorney hours expended on his claim prior to his death. It concluded, however, that she had no right to recover fees for attorney work performed after her husband's death, explaining that she was deprived of "standing" to substitute on Padgett's claim when the DVA decided to award her accrued benefits. *Id.* at 313.

Mrs. Padgett filed a motion seeking full court review of the Veterans Court's order, but this motion was denied on March 4, 2010. She then appealed to this court.

## DISCUSSION

We have jurisdiction over appeals from the Veterans Court under 38 U.S.C. § 7292. Interpretation of the EAJA is a question of law, subject to *de novo* review. *Kelly v. Nicholson*, 463 F.3d 1349, 1352 (Fed. Cir. 2006).

Although the present case has a long and tortuous history, the issue presented on appeal is a straightforward one: Can the surviving spouse of a deceased veteran, who serves as the personal representative of his estate, obtain fees under the EAJA[2] for attorney hours expended following the veteran's death? We conclude that she can.

Pursuant to the EAJA, a "prevailing party" in litigation against the government is entitled to recover reasonable attorney fees and expenses unless the court finds the position of the United States in the underlying litigation was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Veterans Court determined that Padgett was a

---

[2]    In relevant part, the EAJA provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

"prevailing party" for purposes of the EAJA and that the government's position in the underlying litigation was not "substantially justified." *EAJA Decision*, 23 Vet. App. at 309-12. It further determined that Mrs. Padgett, who had been appointed the personal representative of her husband's estate, had standing to seek an award of EAJA fees on the estate's behalf. *Id.* at 310, 313. The court therefore granted Mrs. Padgett an EAJA award of $27,866.67 for 201 attorney hours expended on her husband's claim prior to his death. *Id.* at 313. The court concluded, however, that Mrs. Padgett could not recover approximately $60,000 in attorney fees incurred following her husband's death, explaining that "because Mrs. Padgett has standing in this matter only as [the] representative of her husband's estate . . . she is not entitled to an EAJA award for the work and expenses expended after her husband's death . . . ." *Id.*

Mrs. Padgett contends that the Veterans Court erred in denying attorney fees for work performed following her husband's death. She argues that "[t]he Veterans Court erroneously presupposed that no work done after a veteran has died can be in support of the veteran's own claim for benefits." She asserts, moreover, that the decision to deny attorney fees for time expended following her husband's death "is irreconcilable with [the] EAJA's remedial purpose" and "imposes a limitation on [the] EAJA that is neither derived from the statute nor supported by [Federal Circuit precedent]."

We agree. The government points to nothing in the text of the EAJA or its legislative history to support a per se rule denying recovery for attorney fees incurred after a claimant's death. We reject the government's argument that "any litigation following [a] veteran's death inherently cannot be litigation in pursuit of the veteran's own claim for benefits." Where, as here, litigation following a

veteran's death is required to obtain a *nunc pro tunc* judgment on his claim for service connection, attorney hours devoted to such litigation are directly related to the veteran's claim.

Following a veteran's death, certain specified survivors have the right to recover the benefits that were due and payable to him at the time of his death. *See* 38 U.S.C. § 5121(a); *Phillips v. Shinseki*, 581 F.3d 1358, 1363 (Fed. Cir. 2009). Although the survivor's claim is dependent on the deceased veteran's claim, the survivor must file a separate application for accrued benefits. *See* 38 U.S.C. § 5121(c). Thus, while a survivor's claim for accrued benefits is "derivative of the veteran's claim for service connection, it is nevertheless a separate claim based on a separate statutory entitlement to benefits." *Hyatt v. Shinseki*, 566 F.3d 1364, 1367 (Fed. Cir. 2009) (citations and internal quotation marks omitted).

Simply because a veteran's surviving spouse must pursue her own separate claim for accrued benefits following the veteran's death, however, does not mean that any litigation following a veteran's death relates only to the survivor's, rather than the veteran's, claim. Where a veteran's entitlement to a *nunc pro tunc* judgment is in dispute, litigation on that judgment will necessarily continue after his death. Indeed, the history of the present case illustrates that litigation on a veteran's claim for service connection can continue long after he has died. In March 1993, Padgett filed a claim seeking service-connected benefits for a right hip disability. The DVA repeatedly denied his claim, but in April 2005 an en banc panel of the Veterans Court awarded him service connection after concluding that the board's previous denials of his claim were "simply not plausible in light of the record viewed in its entirety." *En Banc Decision*, 19 Vet. App. at 150 (citations and internal quotation marks omitted).

Soon after its judgment issued, however, the Veterans Court learned that Padgett had died during the pendency of his appeal. The court thereafter withdrew its *En Banc Decision*, dismissed Padgett's appeal as moot, and denied Mrs. Padgett's motion to be substituted on her husband's claim.

On appeal, this court reversed, concluding that the Veterans Court should not have withdrawn its decision, but should instead have reissued that decision *nunc pro tunc* to the date of Padgett's death.[3] *Padgett I*, 473 F.3d at 1367-68. We explained that "[w]here a party dies after his case is submitted, but before the opinion issues, and the case would otherwise be rendered moot, the Supreme Court has consistently entered judgment *nunc pro tunc* to the date of the party's death." *Id.* at 1367. We further concluded that the Veterans Court erred in denying Mrs. Padgett's motion to be substituted on her husband's

---

[3] A judgment that is issued *nunc pro tunc* (which literally means "now for then") assigns an earlier effective date to a judgment than its actual date of issuance. Such a judgment is generally used to correct the timing of a judgment where its issuance has been delayed through no fault on the part of the litigants:

> [T]he rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up.

*Mitchell v. Overman*, 103 U.S. 62, 64-65 (1881); *see Padgett I*, 473 F.3d at 1367.

appeal.[4]  *Id.* at 1371-72.  Because of "[t]he continuing relevance and preclusive effect that the issues in Padgett's appeal" had for her accrued benefits claim, Mrs. Padgett had standing to be substituted on her husband's appeal.  *Id.* at 1370.

Although Mrs. Padgett had standing to be substituted on Padgett's appeal, there was no question that it was his claim, not hers, that was being litigated.[5]  Our holding

---

[4]   In 2008, after our decision in *Padgett I*, Congress enacted legislation that expressly allows an accrued benefits claimant to be substituted on a deceased veteran's claim:

> If a claimant dies while a claim for any benefit under a law administered by the Secretary, or an appeal of a decision with respect to such a claim, is pending, a living person who would be eligible to receive accrued benefits due to the claimant under section 5121(a) of this title may, not later than one year after the date of the death of such claimant, file a request to be substituted as the claimant for the purposes of processing the claim to completion.

38 U.S.C. § 5121A(a)(1).
This provision only applies in cases in which the veteran died after October 10, 2008.  *See* Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, 122 Stat. 4145, 4151.

[5]   It has sometimes been asserted that "a veteran's claim dies when he does," but this proposition "is too broadly stated."  *Withdrawal Order*, 19 Vet. App. at 338 (Kasold, J., dissenting).  A veteran's claim "dies" when he does in that the veteran's entitlement to disability benefits ends when he dies.  *See Haines v. West*, 154 F.3d 1298, 1300 (Fed. Cir. 1998) ("By statute, a veteran's entitlement to payment of disability compensation terminates on the last day of the month preceding the veteran's death.").  Furthermore, the veteran's estate has no right

was that "entering *Padgett's judgment*" on a *nunc pro tunc* basis was consistent with the statutes governing the jurisdiction of the Veterans Court. *Id.* at 1368 (emphasis added). Indeed, litigation on Padgett's claim was not fully resolved until July 8, 2008—nearly four years after he died—when the Veterans Court entered a *nunc pro tunc* judgment on that claim. *See Nunc Pro Tunc Decision*, 22 Vet. App. at 168.

By necessity, a veteran's successor in interest must litigate to obtain a *nunc pro tunc* judgment on his behalf. *See Phillips*, 581 F.3d at 1365 (allowing the daughter of a deceased veteran to be substituted on her father's claim

---

to obtain disability payments that were due and unpaid to the veteran at the time of his death. *See Richard v. West*, 161 F.3d 719, 722-23 (Fed. Cir. 1998). Rather, as noted previously, it is the accrued benefits claimant—typically the surviving spouse—who has the right to any benefits that were due when the veteran died. *See* 38 U.S.C. § 5121(a).

Under certain circumstances, however, a veteran's claim can survive his death. Where, as here, a veteran dies after his case has been submitted to the Veterans Court, but before the court has entered judgment on his claim, a qualified accrued benefits claimant can substitute on appeal in order to obtain a judgment on the veteran's claim. *Phillips*, 581 F.3d at 1363-66; *Padgett I*, 473 F.3d at 1367-70. In such situations, the veteran's claim survives his death for purposes of allowing litigation on it to be fully resolved, thereby permitting the accrued benefits claimant to rely on any judgment entered on the veteran's claim in pursuing his or her own application for accrued benefits. *See Padgett I*, 473 F.3d at 1369 (emphasizing that an accrued benefits claim "derives from the veteran's service-connection claim" and "incorporates any prior adjudications of the service-connection issue on claims brought by the veteran" (citations and internal quotation marks omitted)).

for disability compensation). This does not mean, however, that the veteran's own claim is not being litigated following his death or that a veteran's estate should be precluded from recovering fees for litigation undertaken on his behalf. Here, litigation following Padgett's death was a prerequisite to obtaining a *nunc pro tunc* judgment on his claim and we see no reason that his estate should be precluded from recovering reasonable attorney fees for hours expended during this litigation. Courts routinely allow estates to recover fees and expenses under fee-shifting statutes such as the EAJA.[6] *See Phillips*, 581 F.3d at 1368 (explaining that "there is no need for the representative of an estate to have a separate [accrued benefits] claim in order to prosecute the deceased claimant's EAJA claim"); *see also Smalbein ex rel Smalbein v. City of Daytona Beach*, 353 F.3d 901, 903-08 (11th Cir. 2003); *Geissal ex. rel. Geissal v. Moore Med. Corp.*, 338 F.3d 926, 935-36 (8th Cir. 2003); *Estate of Woll v. United States*, 44 F.3d 464, 467-68 (7th Cir. 1994).

Most of the attorney fees that were denied by the Veterans Court relate to attorney hours devoted to the first appeal to this court. The government's arguments as to why such fees are not recoverable are internally inconsistent. The government acknowledges that Padgett was a "prevailing party" for purposes of obtaining an EAJA award. Padgett prevailed, however, only as a result of litigation occurring after his death. As discussed previously, although the *En Banc Decision* awarded Padgett service connection, the Veterans Court vacated that

---

[6]    In *Phillips*, we allowed the daughter of a deceased veteran, who was the representative of his estate but who was not herself an accrued benefits claimant, to pursue an EAJA application on behalf of her father's estate. 581 F.3d at 1368.

decision when it learned of his death. It was only because of the successful appeal to this court, *see Padgett I*, 473 F.3d at 1367-70, that the *En Banc Decision* was reinstated and Padgett became a "prevailing party." Thus, on the one hand, the government concedes that Padgett was a prevailing party as a result of the *Padgett I* appeal. On the other hand, it argues that no fees can be recovered for attorney time expended on that appeal because "any litigation following the veteran's death inherently cannot be litigation in pursuit of the veteran's own claim for benefits." The government provides no satisfactory explanation, however, for how an appeal that is necessary to establish a veteran's status as a prevailing party could possibly be litigation that is "inherently" unrelated to that veteran's claim.

We likewise reject the government's argument that this court has no jurisdiction over this appeal because it involves only a factual determination regarding the "reasonableness" of Mrs. Padgett's fee request. There is no dispute that this court lacks authority to review challenges to factual determinations made in veterans' cases. *See* 38 U.S.C. § 7292(d)(2). Whether the EAJA permits the award of attorney fees for time expended pursuing a *nunc pro tunc* judgment following a veteran's death, however, is a question of statutory interpretation that falls squarely within the scope of our appellate jurisdiction. *Id.* § 7292(d)(1).

CONCLUSION

Accordingly, the order of the United States Court of Appeals for Veterans Claims is reversed and the case is remanded for further proceedings consistent with this opinion.

Costs

Appellant shall have her costs.

**REVERSED AND REMANDED**