# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-1214

LILLIE M. WINGARD, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided          May 8, 2015)

*Todd M. Wesche*, of Fort Lauderdale, Florida, on the brief for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Gayle E. Strommen*, Deputy Assistant General Counsel; and *Thomas E. Sullivan*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge,* and SCHOELEN and PIETSCH, *Judges*.

SCHOELEN, *Judge*: The appellant, Lillie M. Wingard, the daughter of the deceased veteran, Charlie N. Wingard, appealed a January 11, 2011, decision of the Board of Veterans' Appeals (Board) that denied non-service-connected burial benefits under 38 U.S.C. § 2302. On August 16, 2013, this Court affirmed the Board's decision. *Wingard v. Shinseki*, 26 Vet.App. 334 (2013) (*Wingard I*). On March 10, 2015, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) vacated this Court's decision and remanded the matter. *Wingard v. McDonald*, 779 F.3d 1354 (Fed. Cir. 2015) (*Wingard II*). For the reasons that follow, the Court will affirm the Board's January 11, 2011, decision.

## I. BACKGROUND

The veteran, Charlie N. Wingard, served honorably on active duty in the U.S. Air Force from 1942 to 1963. Record (R.) at 308-09. In December 1989, a VA regional office (RO) determined that

Mr. Wingard's inguinal hernia was service connected, but upon finding "no evidence of recurrence" assigned a noncompensable disability evaluation. R. at 304.

On September 23, 2005, Mr. Wingard died from non-service-connected conditions. R. at 102. It is undisputed that at the time of his death, he did not have any claims pending, he was not in receipt of pension, and his only service-connected condition was rated 0% disabling.

In the January 2011 decision on appeal, the Board denied the appellant's claim for non-service-connected burial benefits under 38 U.S.C. § 2302 and 38 C.F.R. §3.1600(b) (2010). R. at 3-11. The Board found that the criteria for non-service-connected burial benefits had not been met because, among other things, Mr. Wingard was not "in receipt of any compensation or pension" at the time of his death. R. at 5, 7; *see* 38 U.S.C. § 2302(a)(1). The Board stated: "[A]lthough [Mr. Wingard] has been service-connected for residuals of an inguinal hernia since 1989, this disability has always been at a noncompensable level. Therefore, he was not in receipt of any disability compensation." R. at 7-8.

On appeal to this Court, the appellant argued that she satisfied the criteria for non-service-connected burial benefits because (1) the phrase "in receipt of compensation" in section 2302(a)(1) should be interpreted to include those veterans who were *entitled to receive* compensation at death, and (2) Mr. Wingard was entitled to receive compensation at the time of his death because 38 U.S.C. §§ 1110 and 1155 prohibited the Secretary from assigning him a noncompensable evaluation upon finding that his inguinal hernia was service connected. Appellant's Brief (Br.) at 5-15, 18-19. The appellant also challenged 38 U.S.C. § 2302(a)(1) on equal protection grounds, asserting that there was no rational basis for distinguishing between veterans with service-connected disabilities who are receiving compensation, and veterans who have service-connected disabilities and were entitled to receive compensation as a matter of law. *Id*. at 15-18. In addition to disputing the merits of the appellant's arguments, the Secretary asserted that the Court lacked jurisdiction to consider the appellant's challenge to regulations permitting the assignment of noncompensable ratings. Secretary's Br. at 16-17.

In its August 16, 2013, decision, this Court held that the statutory prohibition on judicial review of the content of the rating schedule did not preclude the Court from addressing the appellant's argument that the Secretary's regulations, which provide for the assignment of

noncompensable disability evaluations, are contrary to the plain and unambiguous language of 38 U.S.C. §§ 1110 and 1155. *Wingard I*, 26 Vet.App. at 339-40. On review, the Court affirmed the Board's January 2011 decision denying non-service-connected burial benefits upon finding that the Secretary's interpretation – that sections 1110 and 1155 allow VA to assign noncompensable disability evaluations – was reasonable and that, therefore, the appellant failed to demonstrate that Mr. Wingard was entitled to receive compensation at the time of his death. *Id*. at 340-47. As a result of that determination, the Court (1) deemed it unnecessary to address whether the requirement that a veteran be "in receipt of compensation" at the time of death pursuant to 38 U.S.C. § 2302(a)(1) includes veterans who were *entitled to receive* compensation at the time of death, and (2) found that the appellant failed to demonstrate an equal protection violation because her constitutional challenge to section 2302(a)(1) also relied on the Court holding that Mr. Wingard was entitled to receive compensation during his lifetime. *Id*. at 347-48.

On appeal, the Federal Circuit held that 38 U.S.C. § 7252(b), which provides that the "Court may not review the schedule of ratings for disabilities adopted under section 1155 . . . or any action of the Secretary in adopting or revising that schedule," "precludes th[is] . . . Court from determining whether the schedule, by including a 0% [disability] rating, substantively violates statutory constraints." *Wingard II*, 779 F.3d at 1356. Accordingly, the Federal Circuit vacated the Court's August 16, 2013, decision and remanded the matter for actions consistent with its opinion.

## II. ANALYSIS

When a veteran dies as a result of a non-service-connected disability, the Secretary may pay a sum not exceeding $300 to the person who bore the cost of the veteran's burial and funeral expenses, if the veteran "at the time of death was in receipt of compensation (or but for the receipt of retirement pay would have been entitled to compensation) or was in receipt of pension." 38 U.S.C. § 2302(a)(1). As noted above, it is undisputed that Mr. Wingard was not "in receipt" of compensation at the time of death. The appellant argues, however, that the January 2011 Board erred when it denied non-service-connected burial benefits because (1) the requirement in section 2302(a)(1) that a veteran be "in receipt of compensation" at the time of death includes veterans who were *entitled to receive* compensation at the time of death and (2) Mr. Wingard was entitled to

receive compensation at the time of his death, because he was assigned a noncompensable evaluation for his service-connected disability despite the plain and unambiguous language of 38 U.S.C. §§ 1110 and 1155 prohibiting such an evaluation.

In *Wingard I*, our August 2013 opinion, we rejected the Secretary's broad interpretation of section 7252(b) and *Wanner v. Principi*, 370 F.3d 1124 (Fed. Cir. 2004), as precluding this Court from reviewing the scope of 38 U.S.C. § 1155 and whether the Secretary exceeded statutory authority. Instead, drawing upon the underlying facts and issues in cases that held that section 7252(b) precluded judicial review of the content of the rating schedule, we distinguished the appellant's challenge from challenges that sought review of what should be a disability or the appropriate rating to be assigned a particular disability. *See, e.g.*, *Wanner*, 370 F.3d at 1131 (holding that the Court lacked jurisdiction to review whether Diagnostic Code 6260, which limited disability compensation to tinnitus caused by trauma, conflicted with 38 U.S.C. § 1110's mandate requiring the Unites States to pay compensation "to any veteran thus disabled" and concluding that such review was "indistinguishable from the review of what should be considered a disability"); *Byrd v. Nicholson*, 19 Vet.App. 388, 394 (2005) (Court lacked jurisdiction to hear appellant's challenge that periodontal disease should constitute a disease for VA compensation purposes); *see also Martinak v. Nicholson*, 21 Vet.App. 447, 452 (2007) ("[T]he rating schedule consists only of those regulations which establish disabilities and set forth the terms under which compensation shall be provided.").

The Federal Circuit disagreed with the distinction the Court drew, and held that the appellant's challenge to the Secretary's implementation of section 1155 is beyond this Court's jurisdiction and may only be reviewed through a direct challenge to the Secretary's rulemaking under 38 U.S.C. § 502.[1] *Wingard II*, 779 F.3d at 1355-57. With great respect for our superior court, it is

---

[1] However, Rule 47.12(a) of the Federal Circuit's Rules of Practice substantially limits the time to seek direct review of VA regulations under section 502. Rule 47.12(a) provides that "[a]n action for judicial review under 38 U.S.C. § 502 of a rule or regulation of the Department of Veterans Affairs must be filed . . . within 60 days after issuance of the rule or regulation or denial of a request for amendment or waiver of the rule or regulation." FED. CIR. R. 47.12(a). Accordingly, although the Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, Title 1, § 102, 122 Stat. 4145, 4148 (2008), amended section 502 to remove the prohibition on the Federal Circuit's direct review of the rating schedule, the Federal Circuit's rule appears to isolate regulations promulgated prior to the 2008 amendment as well as any regulation older than 60 days. Consequently, it is difficult to envision when, if ever, the appellant's argument that section 1155 prohibits the assignment of 0% disability ratings may be raised to the Federal Circuit under 38 U.S.C. § 502.

perplexing how it might be that Congress, in removing the splendid isolation in which VA regulations existed until the passage of the Veterans' Judicial Review Act (VJRA) of 1988, intended to preclude judicial review by this Court of whether actions taken by the Secretary exceed statutory authority. Unquestionably, Congress was concerned that the onset of judicial review could result in piecemeal review of individual rating classifications in the rating schedule and, therefore, carved out a limited exception to protect the rating schedule from judicial review. *See* H.R. REP. 100-963, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5810. The Court is cognizant of that concern and recognizes the Secretary's expertise in determining whether an injury or disease is a disability for purposes of laws administered by VA and the average impairment in earning capacity caused by varying levels of disability. *See, e.g.*, 38 U.S.C. § 546 (establishing within the Department an Advisory Committee on Disability Compensation to advise and consult with the Secretary with respect to the maintenance and periodic readjustment of the schedule); S. REP. 110-449, at 64 (2008), *reprinted in* 2008 U.S.C.C.A.N. 1722 (noting the Secretary's position that "[e]stablishing the criteria for rating disabilities and the rates of compensation payable under those criteria depends on gathering and analysis of medical facts, matters of technical and medical judgment, including judgment about what disabilities and levels of disability should be included in the schedule").

Here, however, the appellant argues that section 1155 of title 38, U.S. Code, which clearly lays out 10 specific grades of disability "upon which payments of compensation shall be based, namely, 10 percent, 20 percent, 30 percent, 40 percent, 50 percent, 60 percent, 70 percent, 80 percent, 90 percent, and total, 100 percent," does not authorize the Secretary to assign a 0% disability rating for service-connected disability. The appellant does not seek to alter the substance of the Secretary's regulations relating to a particular disability or second guess the Secretary's absolute discretion to determine what warrants one of the 10 disability ratings authorized by section 1155. Indeed, what if the Secretary were to adopt a schedule authorizing a 15% or 17% disability rating, clearly contrary to the plain language of section 1155? How could such a blatant violation of the clear wording of a statute be beyond our jurisdiction? *Compare* 38 U.S.C. § 7252(b) with § 7261(a)(1); *compare also* S. REP. 110-449, at 64 (noting the Secretary's position that "Congress intended that no court should substitute its judgment for the Secretary's as to what rating a particular

type of disability should be assigned"), *with* S. REP. 110-449, at 13 (generally noting, by way of background, that the VJRA insulated from judicial review "a regulation found in the rating schedule that is alleged to violate a statutory provision"). Thus, respectfully, we see the appellant's issue not as a "substantive challenge to the schedule as conflicting with the statute," *Wingard II*, 779 F.3d at 1357, but as a charge that the Secretary's adopted schedule has exceeded the contours of its enabling statute.

Having stated our concerns with the scope of the Federal Circuit's determination in *Wingard II* and its holding that 38 U.S.C. § 7252 precludes this Court from addressing whether VA was prohibited from assigning Mr. Wingard a 0% disability rating for his service-connected inguinal hernia, we nevertheless are bound by that decision. Accordingly, it is unnecessary for the Court to consider the appellant's remaining arguments – whether the requirement that a veteran be "in receipt of compensation" at the time of death pursuant to 38 U.S.C. § 2302(a)(1) includes veterans who were *entitled to receive* compensation at the time of death, and the appellant's constitutional challenge to section 2302(a)(1) – because both arguments rely on the Court's holding that Mr. Wingard was entitled to receive compensation during his lifetime. *See* Wingard *I*, 26 Vet.App. at 347-48; *see also* Reply Br. at 14.

## III. CONCLUSION

Because there is no dispute that Mr. Wingard was not "in receipt" of compensation at the time of death as required by 38 U.S.C. § 2302(a)(1), and in application of the Federal Circuit's decision, we hold that the appellant fails to demonstrate prejudicial error in the Board's decision to deny non-service-connected burial benefits. Accordingly, the Board's January 11, 2011, decision is AFFIRMED.